**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MASAKAZU USHIJIMA, <br><br> Plaintiff/Counter Defendant, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants/Counter Plaintiffs. | **Civil Action No. 1:12-cv-00318-LY** <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S *DAUBERT* MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT, MR. WALTER BRATIC**

**TABLE OF CONTENTS**

I.   ARGUMENTS AND AUTHORITIES............................................................................... 1

   A.   Bratic Improperly Relies on the Entire Market Value of the Allegedly Infringing Devices................................................................................................................... 2

   B.   Bratic Fails to Tie his Analysis to the Patent-in-Suit, and his Testimony Should Therefore be Excluded .......................................................................................... 5

      1.   There is No Evidence to Support Bratic's Attribution of the Value of the Inverter Circuit ..........................................................................6

      2.   Bratic Improperly Includes the Cost of Lamps in the Royalty Base ..................................................................................................7

   C.   Bratic Relies on a License that is Not Adequately Related to the Patented Technology or the Hypothetical Negotiation........................................................... 9

II.  CONCLUSION................................................................................................................ 10

Samsung brings this motion to exclude certain opinions and testimony of Plaintiff's damages expert, Walter Bratic. Bratic's opinions should be excluded because his report ("Bratic Report") and testimony ("Bratic Dep.") do not meet the reliability standards established by Rule 702 and *Daubert*. *First*, Bratic's proposed damages model is based not on the value of the claimed technology itself, but rather on the entire market value of the accused products. *Second*, Bratic fails to provide evidence to support his proposed calculation of the royalty base. *Third*, Bratic disregards comparable license agreements for the patent-in-suit and instead relies on an unrelated third-party license to support an inflated royalty rate. Well-established precedent from the Federal Circuit prohibits each of these types of damages analysis and has indicated that preclusion of such testimony is the proper way for a court to address such deficiencies.

## I.    ARGUMENTS AND AUTHORITIES

Expert testimony under Rule 702 must be "not only relevant, but reliable" in order to be admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In this regard, the trial court must act as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). Here, the burden is on Ushijima, the party offering Bratic's testimony, to establish by a preponderance of the evidence that it is admissible. *See Daubert*, 509 U.S. at 579, 592 n.10 (1993); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324 (Fed. Cir. 2009) (holding that the patentee bears the burden of proving damages). Ushijima cannot establish that Bratic's opinions are both relevant and reliable in a number of different and independent respects, and therefore those opinions should be excluded.

### A. Bratic Improperly Relies on the Entire Market Value of the Allegedly Infringing Devices.

Under the Entire Market Value Rule ("EMVR"), a plaintiff may not recover damages for a patented feature based on the entire market value of the accused products unless the plaintiff proves that the market value of the accused products is derived from the patented feature. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011); *Lucent*, 580 F.3d at 1336. Bratic concedes that the EMVR does not apply to the facts of this case. Bratic Report at 38-39. Without proof that the claimed feature creates the "basis for the customer demand" under the EMVR, Ushijima cannot properly refer to or rely upon the sales revenue from the accused products. *Uniloc*, 632 F.3d at 1319-20.

However, even after conceding that the EMVR is not applicable, Bratic goes on to rely on the entire market value of the accused products as the basis for his damages analysis—using the sales revenue of the accused products to derive his proposed royalty payments. Bratic Report at 33 and Exh. 4. This approach is improper.

In *Uniloc*, the Federal Circuit confirmed that "[t]he Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate." 632 F.3d at 1320; *see also Mirror Worlds*, 784 F. Supp. 2d 703, 727 (E.D. Tex. 2011) (holding that the patentee "cannot simply apply 'haircuts' adjusting the royalty rate to apportion damages, and thereby justify the jury award" (citing *Uniloc*, 632 F.3d 1320)). Moreover, the Federal Circuit has prohibited the calculation of a royalty as a percentage of the entire market value of the accused products without complying with the EMVR, because a percentage calculation of the entire market value "by definition, is an application of the entire market value rule." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).

2

Despite the fact that Bratic conceded that the EMVR is not applicable to this case, he nonetheless improperly relies on the total sales revenue of the accused products in his royalty calculations. Royalty calculations based on the entire value of the accused products are improper where, as here, the patentee has not asserted, and cannot assert, that the patented technology is the "basis for customer demand."[1]

Bratic may attempt to argue that his use of the entire market value of the accused products is acceptable here because he apportioned his proposed royalty base as percentage of the entire market value.[2] However, this method is no different from simply applying a smaller royalty rate to the entire market value of the accused products—an approach expressly rejected as a violation of the EMVR in *Uniloc* and *Mirror Worlds*. *Uniloc*, 632 F.3d at 1319-20; *Mirror Worlds*, 784 F. Supp. 2d at 727. Furthermore, this method results in a royalty that is calculated as a percentage of the entire market value—and outcome prohibited by the Federal Circuit in *LaserDynamics*. 692 F.3d at 68.

In this case, Bratic simply multiplied the entire market value of the accused products by a first percentage (i.e., the apportionment factor) to calculate the royalty base, and then by a second percentage (i.e., the royalty rate) to calculate the proposed percentage royalty for the accused products. Bratic Report at Exh. 4. However, mathematically, Bratic's approach

---

[1] Notably, Bratic is aware of the improper application of the EMVR in these situations because he himself was the damages expert in *Mirror Worlds*, where the Eastern District of Texas rejected his attempt to rely on the entire market value of the accused products for damages by asserting a small enough royalty rate. *Mirror Worlds*, 784 F. Supp. 2d at 727 ("As Mirror Worlds is not entitled to use the entire market value of the accused products, it was obligated to properly apportion the royalty base to address the accused features, which it did not do."). Even though Bratic's expert opinion was rejected by the court in *Mirror Worlds*, Bratic now again seeks to rely on the entire market value of the accused products.

[2] Bratic calculated an "apportionment factor" of between 4% and 6%, which he multiplied against the entire market value of the accused product to derive his royalty base. *See* Bratic Report at Exh. 4.

3

produces the same result as multiplying the entire market value of the accused products by a smaller royalty rate. In fact, Bratic admitted that the result is the same:

> Q: I'm saying if you take your apportionment factor and multiply that by the rate, the royalty rate of 4 percent..[t]he result of that is what you would apply to total revenues?
> A. Yes, that's one way of doing it."
> …..
> A. I thought you said earlier you take the 3.9 percent [i.e. the apportionment factor], multiply that by 4 percent [i.e. the royalty rate], get the quotient and multiply that by the sales. Either way you can get there because it's just math.
> Q. Either way, it's the same?
> A. Correct. *The outcome is the same mathematically*.

Bratic Dep. at 57-58 (emphasis added). Bratic ultimately calculated his proposed royalty as a percentage of the entire market value of accused products, disguising his calculations as two percentages (i.e., an apportionment factor and a royalty rate) rather than a single percentage (i.e., a royalty rate). This approach was expressly rejected by the Federal Circuit. *LaserDynamics*, 692 F.3d at 69. "Whether called 'product value apportionment' or anything else, the fact remains that the royalty was expressly calculated as a percentage of the entire market value of a [accused device] rather than a patent practicing [component] alone. This, by definition, is an application of the entire market value rule." *Id*. at 68.

In *LaserDynamics*, the patentee apportioned the royalty base by multiplying the entire market value of the accused products by one-third, and then multiplied the royalty base by a royalty rate—using two percentages to calculate a percentage royalty from the entire market value, precisely as Bratic has done here. *LaserDynamics*, 694 F.3d at 69. The Federal Circuit, however, rejected the "arbitrariness" of the patentee's damages analysis and prevented the patentee from evading the requirements of the EMVR by simply applying a percentage apportionment factor to the entire market value. *Id*.

4

Similarly, in *SmartFlash*, the patentee apportioned the royalty base by multiplying the entire market value of the accused products by the percentage of survey respondents who indicated the infringing feature motivated them to buy the accused products, and then multiplied the royalty base by a royalty rate. *Smartflash LLC, v. Apple, Inc.*, No. 13-0447, 2014 WL 7336213 , at *2 (E.D. Tex. Dec. 23, 2014). Again, the patentee used two percentages to calculate a percentage royalty from the entire market value, exactly as Bratic has done here. The Eastern District of Texas excluded the patentee's "flawed application of the entire market value rule," noting that the patentee failed to demonstrate that the patented features were the "sole motivating factor" for purchasing the accused products. *Id.* at *3, 5.

As in *LaserDynamics* and *SmartFlash*, Bratic has not shown (and in fact concedes he is not seeking to show) that the patented technology is the basis for consumer demand of the accused products. Therefore, he improperly uses the entire market value of the accused products in his royalty calculations, and his opinion should be excluded for at least this reason.

### B. Bratic Fails to Tie his Analysis to the Patent-in-Suit, and his Testimony Should Therefore be Excluded

The Federal Circuit requires that damages evidence must be specifically tied to the patent-in-suit: "If the patentee fails to tie the [damages] theory to the facts of the case, the expert testimony *must* be excluded." *Uniloc*, 632 F.3d at 1315 (emphasis added); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."). Furthermore, expert testimony on patent damages must be clearly linked to the specific facts and technology at issue in the case in order to be admissible. *Uniloc*, 632 F.3d at 1315; *Lucent*, 580 at 1324. "Any evidence unrelated to the claimed invention does not support compensation for

5

infringement but punishes beyond the reach of the statute." *Uniloc*, 632 F.3d at 1316 (alteration omitted) (quoting *ResQNet.com*, 594 F.3d at 869).

### 1. There is No Evidence to Support Bratic's Attribution of the Value of the Inverter Circuit

Bratic relies on generalizations in his report which fail to tie his damages theory to the facts of the case. More specifically, in his calculation of the royalty base, Bratic attributes 50% of the value of the IP board to the inverter circuit. *See* Bratic Report at Exhs. 12, 13, and 14. Bratic has not justified the application of this method to the facts of this case.

As Bratic concedes, the IP boards in the accused products (the circuit boards which include both an inverter circuit as well as other circuitry) includes features unrelated to the technology of the patent-in-suit. Bratic Dep. 94-95. Bratic seeks to resolve this issue by determining that 50% of the value of the IP board is attributable to the accused functionality, regardless of the cost of the IP board. Bratic accepted the 50% figure based solely on a conversation with Ushijima's technical experts, Mr. Flasck and Mr. Laney, Bratic Report at 42, and he admitted that he does not know how the 50% figure was calculated. Bratic Dep. at 200; *see also* Bratic Dep. at 94, 202.

Bratic's method leads to the impermissible result that if the cost of the IP board increases due to a functionality unrelated to the patent-in-suit, then his proposed royalty base for the patent-in-suit would necessarily increase as well. For example, if the cost of one IP board is $3.03 (e.g., BN44-00132A), Bratic argues the value attributable to the inverter circuit is $1.51. If the cost of another IP board, however, is $47.25 (e.g., BN44-00141B), then Bratic argues the value attributable to the inverter circuit is $23.63. *See* Bratic Report at Exh. 8.1 and Bratic Dep. at 200-01. However, Bratic was unable to explain why the value of the allegedly inventive inverter circuit would be $1.51 in one IP board, but as high as $23.62 in another IP board. Bratic

6

Dep. at 94, 202. More importantly, he was unable to explain how he concluded that the increase in the value he apportioned to the inverter circuit was related *solely* to the patented technology, as opposed to unpatented technology. *Id.* In fact, the difference in value here, based on Bratic's analysis is not in any way tethered to the patented technology.

Where an expert's apportionment "appears to have been plucked out of thin air based on vague qualitative notions of the relative importance of the [patented] technology" and there is a "complete lack of economic analysis to quantitatively support the [proposed] apportionment," then the testimony should be excluded. *LaserDynamics*, 694 F.3d at 69 (affirming exclusion of expert's testimony, where expert apportioned one-third of the price of an accused device for his reasonable royalty calculation based on the alleged "relative importance" of the patented component to the accused device). That is precisely what Bratic has done here. Bratic "did not use the type of reliable economic principles and methods required by Rule 702 for an economic damages expert*." IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690 (E.D. Tex. 2010) (Rader, J., sitting by designation). Bratic's calculations are not supported by any evidence of the value of the patented contribution, and his analysis is not tied to the claimed invention's footprint in the marketplace. Accordingly, his opinions should be excluded.

### 2. Bratic Improperly Includes the Cost of Lamps in the Royalty Base

Similarly, Bratic also seeks to compensate Ushijima for other technology that is unrelated to any claimed advance achieved by the patent-in-suit. The supposed advance of the patent-in-suit is directed to inverter circuit technology, not to the technology of a backlight lamp itself. Despite the fact that the patent does not involve any novel lamp functionality, Bratic in his analysis includes compensation for the value of the lamps in the accused products.

Bratic admitted during deposition that, as far as he was aware, the patent-in-suit did not claim any novel functionality with respect to lamp technology; the claimed inverter circuit could

7

be used with any lamp.  Bratic Dep. at 39.  Nevertheless, Bratic still included the cost of the lamps in the royalty base for the accused products.

Bratic's inclusion of the lamp costs in his damages analysis artificially drives his damages figure substantially higher due to a component that is not in any way a technological advance.  The lamp cost is a substantial portion of the cost that Bratic attributes to the allegedly infringing components.  In fact, for many of the accused products, the lamp cost comprises the vast majority of the royalty base of the allegedly infringing components.  For example, Bratic admits that for televisions, 80% of the royalty base for the accused television is the cost of the lamp.  Bratic Dep. at 114 ("So in televisions, 80 percent of the royalty goes right to the bottom line, doesn't it? 80 percent of the royalty is attributable to the lamp. Correct?  A. 80 percent of the adjusted cost is due to – on average, due to the lamps. And that's because there's a lot of lamps.").  *See also* Bratic Dep. at 98-99; Bratic Report at Exh. 12.  The fact that Bratic admitted the claimed technology could be used with any lamp makes his proposed royalty base even more arbitrary, because the royalty base could vary significantly depending on the lamps selected for any given product.  The Federal Circuit cautioned against the arbitrary expansion of the royalty base and the "considerable risk that the patentee would be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 69.  This is precisely the result here, where Bratic derived the majority of the royalty base for the allegedly infringing components from the cost of the lamps.

Bratic's failure to provide evidence that the cost of the lamps are related to the claimed invention does not support compensation for infringement, but "punishes beyond the reach of the statute" in a manner prohibited by the Federal Circuit.

8

### C. Bratic Relies on a License that is Not Adequately Related to the Patented Technology or the Hypothetical Negotiation

The Federal Circuit has held that a patentee must not rely on license agreements that are "radically different from the hypothetical agreement under consideration" to determine a reasonable royalty. *Lucent*, 580 F.3d at 1327. In *Lucent*, the Federal Circuit held that a damages verdict was not supported by substantial evidence where the patentee's expert relied on eight license agreements that were "directed to a vastly different situation than the hypothetical licensing scenario" at issue in that case. 580 F.3d at 1328-29; *see also ResQNet.com*, 594 F.3d at 872 ("[T]he district court . . . must consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question.").

Bratic is aware that Ushijima and his company, Technolium, entered into ten different license agreements, eight of which included the patent-in-suit (or its foreign counterpart). Bratic Report at 23-24. Bratic also conceded that Ushijima never obtained a running royalty as a percentage of revenue of products sold. Bratic Dep. at 62. However, Bratic then ignores the fact that in all the prior Technolium agreements there was only a *per-unit* royalty—never a *percentage* royalty—of approximately four to fourteen cents per transformer. *See* Exhibit A (summarizing Technolium agreements); Bratic Dep. at 63-64. In fact, Bratic later admitted that he never even read any of these licenses, but instead relied on translations of selected portions of the documents, which translations were provided by Ushijima's counsel. Bratic Dep. at 64-65, 75. Importantly, many of the licenses were entered into around the time of the hypothetical negotiation, and the licensees included Hitachi Ferrite (a subsidiary of an electronics company similar to Samsung). *See* Exhibit 3 of Chen Dec. (Summary of Ushijima's Licenses).

9

Despite the fact that Bratic had comparable licenses for the patent-in-suit available to him, he disregarded all of those agreements, and instead relied solely on a third party "Practical/TCP" agreement which he selected after conducting a search of the RoyaltySource database. Bratic Report, p. 34-36. However, this agreement is directed to different patents, different technology, and an altogether different licensing scenario from the present case. *Id*. Bratic relies on the Practical/TCP agreement to propose a percentage royalty, insisting that there is no difference between a per-unit royalty and a percentage royalty because "it's just math." Bratic Dep. at 59.

However, Bratic's proposed percentage royalty is not supported by the Practical/TCP agreement. First, the Practical/TCP agreement does not include a percentage royalty but rather a per-unit royalty that is capped at a fixed percentage. Bratic Report, p. 34-36. Second, Bratic conceded that he did not have any quantitative information on the alleged benefits of the patent-in-suit to support how he calculated the 4% royalty rate. Bratic Dep. at 34; *see also* Bratic Dep. at 42-45, 47, and 49.

Accordingly, there is no basis in fact to associate the royalty rate in the Practical/TCP agreement with the hypothetical negotiation at issue in the case. Instead, Bratic has done exactly what the Federal Circuit has forbidden by inflating his reasonable royalty analysis with a cherry-picked license without showing any economic linkage to the technology at issue.

## II. CONCLUSION

In sum, the opinions and testimony of Bratic are both unreliable and unsupported. Accordingly, Bratic's opinions and testimony should be excluded.

Counsel for the parties have conferred to seek resolution of the matter but could not reach an agreement. Oral hearing of this Motion is respectfully requested.

Date:  January 9, 2015	Respectfully submitted,


    /s/ Michael J. Barta
    Kevin J. Meek
    State Bar No. 13899600
    kevin.meek@bakerbotts.com

    BAKER BOTTS L.L.P.
    98 San Jacinto Blvd., Suite 1500
    Austin, Texas 78701
    Telephone:  (512) 322-2500
    Facsimile:  (512) 322-2501

    Michael J. Barta
    (Admitted *pro hac vice*)
    District of Columbia Bar No. 431663
    michael.barta@bakerbotts.com

    BAKER BOTTS L.L.P.
    The Warner
    1299 Pennsylvania Ave., NW
    Washington, D.C. 20004-2400
    Telephone:  (202) 639-7700
    Facsimile:  (202) 639-7890

    Neil P. Sirota
    (Admitted *pro hac vice*)
    New York Bar No. 2562155
    neil.sirota@bakerbotts.com
    Robert L. Maier
    (Admitted *pro hac vice*)
    New York Bar No. 4123246
    robert.maier @bakerbotts.com
    Henry Chen
    (Admitted *pro hac vice*)
    New York Bar No. 4585196
    henry.chen@bakerbotts.com
    Joshua D. Sibble
    (Admitted *pro hac vice*)
    New York Bar No. 4883716
    joshua.sibble@bakerbotts.com

    BAKER BOTTS L.L.P.

                          30 Rockefeller Plaza, 44th Floor
                          New York, New York 10112-4498
                          Telephone:  (212) 408-2500
                          Facsimile:  (212) 408-2501

                          *Attorneys for Defendants*
                          Samsung Electronics Co., Ltd. and
                          Samsung Electronics America, Inc.

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on January 8, 2015, counsel for Defendants, Henry Chen, conferred with counsel for Plaintiff, Matthew Prebeg, in good faith in an effort to resolve the dispute underlying this motion without court action, and Plaintiff is opposed to the relief sought.

                                                        /s/ Henry Chen
                                                        Henry Chen

**CERTIFICATE OF SERVICE**

The undersigned hereby swears that on January 9, 2015, he caused the foregoing document, **DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S** *DAUBERT* **MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT, MR. WALTER BRATIC**, to be served on opposing counsel as follows:

    Matthew J.M. Prebeg (mprebeg@pfalawfirm.com)
    Stephen W. Abbott (sabbott@pfalawfirm.com)
    Christopher M. Faucett (cfaucett@pfalawfirm.com)
    Brent T. Caldwell (bcaldwell@pfalawfirm.com)
    Zhe Wang (pwang@pfalawfirm.com)

**PREBEG FAUCETT & ABBOTT, PLLC**
8441 Gulf Freeway, Suite 307
Houston, TX 77017

                                              /s/ Joshua D. Sibble
                                              Joshua D. Sibble