UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MASAKAZU USHIJIMA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Civil Action No. 1:12-cv-00318-LY<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
***DAUBERT* MOTION TO PRECLUDE TESTIMONY OF**
**PLAINTIFF'S DAMAGES EXPERT, MR. WALTER BRATIC**

Plaintiff, Masakazu Ushijima, ("Plaintiff") files this Response in opposition to Defendants' *Daubert* Motion to Preclude Testimony of Plaintiff's Damages Expert, Walter Bratic (Dkt. 145).

## I. SUMMARY OF ARGUMENT

Defendants argue that Bratic improperly relies upon the "entire market value rule." The crux of Defendants' other arguments are directed to the weight of the evidence Bratic considered, not the admissibility of his opinions. They argue that he improperly reached conclusions by relying upon the opinions of technical experts, that he improperly included components found in the infringing products in the royalty base, and that he failed to consider an appropriate pool of licenses to calculate the royalty rate applied to the infringing products. Defendants' motion should be denied.

First, Bratic does not rely upon the entire market value rule to reach his conclusions. In fact, he agrees that this rule is inapplicable to this case. Instead, Bratic apportioned a royalty base that is based on the minimum average technical contribution of the smallest salable patent-practicing unit with the claimed functionality to the infringing products. This is a sound and reliable methodology and consistent with prevailing authorities. Bratic's opinions are based upon a reasonable estimate of the value of the claimed technology, determined by a sound and reasoned methodology supported by evidence in this matter.

Second, Bratic may undoubtedly rely upon the opinions of technical experts in order to reach his conclusions. Defendants' arguments go to the weight of the evidence Bratic considered, and not the admissibility of his opinions, which is improper under a *Daubert* analysis.

Third, consistent with the plain language of the asserted claims, Bratic properly included the components disclosed and recited by the asserted claims when calculating the royalty base, which is the proper method for calculating the base.

Fourth, Bratic reliably calculated a royalty rate only after considering no less than a dozen licenses and the technical opinions of Plaintiff's technical experts. Defendants' arguments go solely to the weight of the evidence he considered, and not the admissibility of his opinions.

## II.     SUMMARY OF BRATIC'S ANALYSES AND OPINIONS

The asserted claims of the patent in suit, U.S. Patent No. 5,495,405 ("the '405 patent"), recite a novel design of an inverter circuit for turning on a discharge tube (*e.g.*, cold-cathode fluorescent lamp ("CCFL")). Ex. A, '405 patent at 8:56-10:6. More specifically, claim 4 of the '405 patent requires several components for the claimed inverter circuit, including "a leakage flux type step-up transformer," "a discharge tube" and "a resonan[t] circuit." *Id.*

Plaintiff has accused Defendants' "LCD computer monitors, LCD television sets, and other LCD monitor products" of infringing the '405 patent. Plaintiff's Second Amended Complaint (Dkt. 89) at ¶10. Plaintiff's technical experts (R. Flasck and O. Laney) determined that 647 product models (259 televisions and 388 monitors) infringed the '405 patent. On October 3, Bratic provided a damages report focusing on these 647 products. *See* Ex. B, Expert Report of Walter Bratic at 73-81[1].

Bratic relied upon the 15-factor *Georgia-Pacific* methodology to determine a reasonable royalty. He opined that a reasonable royalty should be applied to the units sold by Defendants during the infringing period, calculated based on three independent product categories for royalty bases—computer monitors, televisions and laptops. *Id.* at 20-21, 46.

Bratic first determined the apportioned royalty base regarding each category, *i.e.* only those components that implement the technology claimed in the asserted claims of the '405 patent, which represents the apportioned "smallest salable patent-practicing unit" (SSPU). *Id.* at 39-40 (¶81).

---

[1] The report is filed under seal since it contains confidential information designated by Defendants. For convenience of the Court, Plaintiff added page numbers at the bottom of each page so that the exhibits will also have pagination.

He then analyzed, within each category, the total estimated cost of sales of the infringing products in each calendar year,[2] and the total cost of the apportioned SSPU for the same year. *Id.* at 112 (Exhibit 12, televisions), 113 (Exhibit 13, monitors), P.114 (Exhibit 14, laptops). By comparing the two sets of cost numbers, Bratic obtained an apportionment factor (a percentage reflecting the minimum on-average value contribution of the SSPU to the entire product) to be approximately 6% for televisions, 4% for computer monitors, and 4% for laptops. *Id.* at 40-42, 72. He calculated the royalty base based on the apportionment factors and the total sales revenues for each product category. *Id*. at 72.

In order to determine the royalty rate, Bratic reviewed Plaintiff's own licenses and searched for, and analyzed, technically comparable industry licenses such as the license between Practical Innovations and Technical Consumer Product ("Practical License"). *Id.* at 33-37. Bratic interviewed Plaintiff's technical experts on the relative technical value of the patent involved in the Practical License as compared to the '405 patent. Following his review of the Practical License, and based on his interviews with Plaintiff's technical experts and other considerations, he determined that a 4% rate should be applied to each of the respective royalty bases. *Id.* at 45.

## III.  LEGAL STANDARD

When calculating a reasonable royalty, one must follow the general rule that royalties must be based on the "smallest salable patent-practicing unit" closely related to the claimed invention. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014)[3]. A narrow exception to the general rule is

---

[2] Because Defendants improperly refused to produce financial information regarding profits, cost of sales or gross margin of the accused products, Bratic was required to make an educated estimate of the cost of sales based on the sales price of the accused products and the year-by-year gross margin from companies of comparable size and product offerings. *See* Plaintiff's Motion to Compel, Dkt. 128 at 7-8 ("All Information Concerning Profits Withheld); Ex. B at 41 (¶84), 84 (Exhibit 7).

[3] Defendants inexplicably do not mention the *Virnetx* case in their motion, which sets forth the most current standards for evaluating the issues presented in their motion.

the "entire market value rule" (EMVR), where a patentee may be awarded damages as a percentage of revenues or profits attributable to an entire multi-component product if it can be shown that the patented feature drives the demand for the entire product. *LaserDynamics*, 694 F.3d at 67.

In *Virnetx*, a prevailing authority not considered by Defendants, the Federal Circuit further clarified that if the smallest salable unit is itself a multi-component product containing non-infringing features, the patentee has to *estimate* what portion of the value of that unit is attributable to the patented technology in order to reach an appropriate royalty base. *Virnetx*, 767 F.3d at 1327-28 (emphasis added). Nevertheless, the *Virnetx* court recognizes that in cases where the claimed features have never been individually sold, *patentee's estimate does not require absolute precision and may involve some degree of approximation and uncertainty*. *Id.* at 1328.

## IV.   ARGUMENTS AND AUTHORITIES

### 1.   Bratic does not rely upon the Entire Market Value Rule and his opinions are sound and reliable.

Bratic does not rely upon the EMVR. In fact, *he agrees the EMVR is inapplicable to this case.* Defendants attempt to characterize the basis for his opinions as the EMVR. It is not, and Defendants have lost these same arguments before.

At least one other court has addressed the very same issue and arguments made by the Samsung defendants that are presented in this case. *Fractus, S.A. v. Samsung Electronics Co.*, 876 F. Supp. 2d 802, 833-35 (E.D. Tex. 2012). In *Fractus*, Judge Davis upheld the damage model of *Fractus*'s damage expert,[4] because the challenged expert did not rely upon EMVR despite the defendants' arguments otherwise. The court held that Fractus's expert did not invoke the EMVR and instead "presented substantial evidence 'tending to separate or apportion the defendant's

---

[4] Defense counsel in the instant case, Neil Sirota, Robert Maier, and Michael Barta, are listed as counsel for Defendants in the *Fractus* case.

-4-

profits and the patentee's damages between the patented feature and the unpatented features.'" *Id*. at 833.  Likewise, Bratic has also reliably "apportion[ed] the royalty down to a reasonable estimate of the value of its claimed technology," *Virnetx*, 767 F.3d at 1329, and apportioned Defendant's profits and Plaintiff's damages between the patented feature and the unpatented features based on the information provided to him by Plaintiff's technical experts.

In his analysis, Bratic properly recognized that the inverter circuit of the asserted claims requires three general functional components—a transformer, a resonant circuit, and a discharge tube.[5]  Each of the infringing products includes: (i) a power supply board (also called "IP board")[6] that embeds one or more inverter transformers; and (ii) a backlight unit that houses one or more lamps (a type of discharge tube).  *See* Expert Report of R. Flasck (Dkt. 144-3) at 34, 45-89 (Exhibit 2).  A resonant circuit is also found when the IP board is connected to the lamp set.  *Id.* at 75-79.

With respect to Bratic's understanding of the SSPU, he states:

> The apportioned "smallest salable patent-practicing unit" represents the combination of an inverter circuit and a lamp set, which includes at least one lamp, with the number of lamps varying with the size of the product. The inverter circuit resides on the IP board.

Ex. B at 40.  Bratic makes clear that the apportioned royalty base of the infringing product sales is "the combined sales of the lamps and the inverter circuits, the latter of which is a component of the IP board."  *Id.* at 42.  It should be noted that Defendants only produced purchase costs for the entire IP board, and did not produce bills of material or similar cost information that would have allowed Bratic to ascertain the exact cost of each of the components found on the IP boards that collectively perform the inverter function.  Ex. C, Bratic Dep. at 41:14-22, 43:4-10.  As a result of

---

[5] Based on the analysis performed by Plaintiff's technical experts.
[6] Plaintiff has identified 207 different IP boards in the various accused products (with some boards being used in multiple models of the accused products), among which Mr. Flasck found 182 infringing when connected to lamps.  Expert Report of R. Flasck (Dkt. 144-3) at 45-49.

Defendants' refusal to produce this information, Bratic was required to rely on Laney's expert opinion that at least 50 percent[7] "of the functionality in the IP boards is attributed to the asserted claims of the '405 patent." *Id.* at 86:24-87:9; Ex. D, Laney Decl. at ¶ 7. The royalty base was determined to be 50% of the cost of the IP board, plus the cost of the lamp set.

Given Defendants' refusal to produce information that they complain was not used by Bratic, it was not feasible for him to obtain a value of the SSPU for each of the 647 infringing product models in the manner demanded by Defendants for each individual infringing product model, which is not required under prevailing legal authority. *Virnetx*, 767 F.3d at 1328.

The methodology that Bratic employed to approximate the royalty base is reliable and well within the degree of certainty permitted under the law. *Id.* First, while being mindful of three types of infringing products, Bratic divided the royalty base into three independent groups. Ex. B at 112-114. For each group, Bratic calculated the year-by-year average cost of the inverter circuit located on the IP board and that of the lamp set, taking into account the yearly change of cost due to factors such as lower purchase price caused by improved technology. *Id.* Bratic then used a ratio ("apportionment factor" or "AF") between the SSPU cost and the product cost to reflect the on-average technical contribution of only the SSPU to the product. *Id.* Bratic observed the year-by-year AFs clustered around the total AF (*i.e.* from 2006 to 2014), and concluded that the total AF could properly be calculated as the average technical value that the SSPU contributes to the infringing products. *Id.* (6% for televisions, 4% for computer monitors and 4% for laptops); *see also Fractus*, 876 F. Supp. 2d at 835-36 (upholding the expert's 10% apportionment of the average market value of the accused phone products down to the antenna—a sub-component practicing the accused functionality). This calculation itself eliminates all but the infringing components from

---

[7] Defendants argue there is no evidence to support this 50% attribution, *see* Bratic Motion (Dkt. 145) at 6-7, which Plaintiff addresses in Sec. III.2 of this Response, *infra*.

the sales price of the accused products. It also accounts for the higher value of the infringing functionality in products featuring multiple infringing inverter circuits, multiple lamps, or higher power infringing components. Ex. D at ¶ 6.

Defendants argue that because Bratic calculated the value of the SSPU (the AF) by applying the appropriate percentages to a complete product category, one could multiply these percentages by the royalty rate for all products to arrive at a royalty rate based on the entire market value (*i.e.* AF times a 4% royalty rate). Bratic Motion (Dkt. 145) at 3. However, this argument ignores the validity of Bratic's sensible method of arriving at the value of only the SSPU by using the AF as a percentage of the costs of the accused products. Defendants seize upon the fact that, if one chose to do so, one could multiply two percentages to obtain a third, smaller one. However, this fact is not relevant to the reliability of Bratic's method for calculating the royalty base, and Defendants' argument ***ignores the fact that the apportioned base was indeed calculated***.

The real question relevant to a *Daubert* challenge is whether Bratic's methodology of apportioning the royalty base using the AF stated as a percentage is ***reliable***. This method of calculating the SSPU contribution to the entire product is not only reliable, but arguably the only feasible method available to calculate the royalty base, particularly where, as here, Defendants refused to produce relevant information for analysis by Bratic, and given the fact that infringing products are extremely heterogeneous with respect to the use and cost of the SSPU incorporating the accused functionality. Ex. C at 85:24-88:20 (noting that Defendants' failure to provide certain information has caused him to make an approximation using average costs). When determining the AF, Bratic never uses a "rule of thumb" or "pluck[s] out of thin air based on vague qualitative notions of the relative importance of" the patented technology. *Cf. Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011); *LaserDynamics*, 694 F.3d at 69.

In sum, Bratic's apportionment of the royalty base by considering the minimum average of the technical contribution of the SSPU to the infringing products is reliable, and the reasonableness of his calculations should be a question reserved for the trier of fact.[8]

### 2. Bratic may base his opinion on a technical conclusion by technical experts.

Defendants argue that there is no evidence that justifies Bratic's 50% attribution of the value of the IP board to the inverter circuit. However, Bratic noted in his report and during deposition that this is a technical conclusion he accepted from Plaintiff's technical experts, and more specifically, Mr. Laney. *See* n. 5, *supra*; Ex. B at 42 (¶ 85); Ex. C at 86:24-87:9; Ex. D at ¶¶ 4, 7[9]. FED. R. EVID. 703 allows an expert to "base an opinion on facts or data in the case that the expert has been made aware of," and there is nothing inherently unreliable (affecting Rule 702 admissibility) regarding that reliance. Indeed, "experts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014).

Defendants disagree with Laney's opinion that 50% of the value of the SSPU is attributed to the patented technology. However, this is a question of fact that goes to the weight of the opinions of Plaintiff's technical experts, not the admissibility of Bratic's opinion. *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012); *Apple*, 757 F.3d at 1321-22 ("Motorola is free to address [the facts that Apple's damage expert relied upon] on cross examination and through the testimony of its own expert witness."). Bratic has explained his methodology in detail, and has explained the sources of the data he used to calculate damages.

### 3. The cost of the lamps were properly considered in calculating the royalty base.

---

[8] *Mirror Worlds* is distinguishable from this case, because the patentee in *Mirror Worlds* failed to properly apportion the royalty base while Bratic in this case has rigorously extracted the relative value of the accused functionality from the revenue base. *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 727 (E.D. Tex. 2011).

[9] Notably, Defendants questioned Mr. Flasck regarding this conclusion during his deposition, but curiously never questioned Mr. Laney on this subject.

Without citing any facts or legal authority, Defendants advance their opinion that because "the claimed inverter circuit could be used with any lamps," the lamp costs should not be included in the royalty base.[10] Bratic Motion (Dkt. 145) at 7-8. This opinion ignores the plain language of the asserted claims that expressly require "a discharge tube" supplying "parasitic capacitance" and the fact that all of the infringing products feature one or more of these lamps. Ex. A at 8:56-10:6. A proper damages analysis must consider the value of each of the components representing the claimed elements, regardless if the patentee invented the component himself. *Thinkoptics, Inc. v. Nintendo of America, Inc.*, *et al.,* 2014 WL 2859578 at *2 (E.D. Tex. June 21, 2014). Defendants' unsupported argument leads to the impermissible result that the apportioned SSPU, without the lamp, would not practice the invention. Therefore, Bratic reliably included the lamp component in his calculation of the royalty base, which is premised on the plain language of the claims and necessary elements for the accused functionality. Ex. C at 99:9-22.

Moreover, whether or not the invention can be used with any lamp is irrelevant to the calculation of the damages base. What matters is whether the lamp is a required element of the asserted claim, which it plainly is. Likewise, Defendants' argument that the cost of the lamps are a large portion of the royalty base is not relevant to their *Daubert* challenge. The question of whether the royalty rate determined by Bratic, under these circumstances, was reasonable, is a question properly left to the trier of fact.

### 4.     Bratic has reliably calculated the royalty rate based on a sufficient pool of licenses he considered.

Defendants disagree with Bratic's assessment of the licenses he reviewed and relied upon,

---

[10] In bringing this argument, Defendants also made the demonstrably false statement that "Bratic admitted during deposition that […] the claimed inverter circuit could be used with any lamp." Dkt. 145 at 7-8. Bratic made no such statement. In the page of Bratic's deposition cited by Defendants (39), Bratic explains that he does not know if the invention can be used with any lamp. However, in the prior page of testimony, not submitted by Defendants with their motion, Bratic repeatedly tells Defense counsel that he does not know this assertion to be true. Ex. C at 38.

and then cite their own opinions as a basis for their *Daubert* motion. However, the question of the appropriateness of the license agreements is a fact intensive inquiry which is properly presented to the trier of fact, not a basis for a *Daubert* challenge.

Bratic considered all ten licenses entered into by Plaintiff (and his prior company), as well as many other licenses involving similar technologies. Ex. B at 23-24, 34. Among the commercial licenses he considered, Bratic determined that only the Practical License involves technology and licensing terms comparable to those found in this case, which was based upon on Plaintiff's technical expert, Mr. Laney's opinions regarding technical comparability. *Id.* at 38 (¶ 74). As discussed in Sec. III.2, *supra*, a damage expert may rely upon technical experts regarding technical issues. Bratic also explained in detail how he determined if the license agreements he considered were comparable or not. *Id.* at 24; Ex. C at 60:9-18.

Contrary to Defendants' arguments, Bratic also carefully explained how he conservatively determined the 4% royalty rate after considering the Practical License. Ex. C at 168:19-169:6 (multiplying the lowest royalty rate of 2% in the comparable agreement with a lower end of the 2 to 3 times factor); Ex. B at 37 (relying on Mr. Laney's opinion that the '405 patent is 2 to 3 times technologically more valuable than the technology in the Practical License); *see also* Ex. D at ¶ 11. Again, Defendants' arguments go to the weight of these opinions, not their admissibility.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Preclude Testimony of Plaintiff's Damages Expert, Mr. Walter Bratic, should be denied.

Dated: January 20, 2015      Respectfully submitted,

/s/ Matthew J.M. Prebeg
Matthew J.M. Prebeg (Texas Bar No. 00791465)

        Stephen W. Abbott (Texas Bar No. 00795933)
        Christopher M. Faucett (Texas Bar No. 00795198)
        Brent T. Caldwell (Texas Bar No. 24056971)
        Zhe "Philip" Wang (Texas Bar No. 24084513)
        **PREBEG, FAUCETT & ABBOTT PLLC**
        8441 Gulf Freeway, Suite 307
        Houston, Texas  77017
        Telephone:     (832) 742-9260
        Facsimile:      (832) 742-9261
        Email:           mprebeg@pfalawfirm.com
                        sabbott@pfalawfirm.com
                        cfaucett@pfalawfirm.com
                        bcaldwell@pfalawfirm.com
                        pwang@pfalawfirm.com

        Edwin Armistead Easterby (Texas Bar No. 00796500)
        **WILLIAMS KHERKHER LAW FIRM**
        8441 Gulf Freeway, Suite 600
        Houston, Texas 77017
        Telephone:     (713) 249-2189
        Facsimile:      (713) 643-6226
        Email:           aeasterby@williamskherkher.com

        *Attorneys for Plaintiff, MASAKAZU USHIJIMA*

## CERTIFICATE OF SERVICE

  I hereby certify that on the 20th day of January, 2015, I electronically filed the foregoing with the Clerk of Court via the Court's CM/ECF system per Local Rule CV-5(a)(1), which will send notification of such filing to opposing counsel as follows:

  Joseph R. Knight (joe.knight@bakerbotts.com)
  Kevin J. Meek (kevin.meek@bakerbotts.com)
  Matt C. Wood (matt.wood@bakerbotts.com)

**BAKER BOTTS L.L.P.**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701

  Michael J. Barta (michael.barta@bakerbotts.com)

**BAKER BOTTS L.L.P.**
The Warner
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400

  Neil P. Sirota (neil.sirota@bakerbotts.com)
  Robert L. Maier (robert.maier@bakerbotts.com)
  Joshua D. Sibble (joshua.sibble@bakerbotts.com)
  Brian S. Boerman (brian.boerman@bakerbotts.com)
  Henry Chen (henry.chen@bakerbotts.com)

**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza, 44th Floor
New York, New York 10112-4498

           /s/ Matthew J.M. Prebeg
            Matthew J.M. Prebeg